UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TAMMY D. (HUSKINS) GRANDSTAFF, <br>     Plaintiff, <br> v. <br><br> WILLIAM A. DULIN, Sheriff of Starke County, <br> in his individual and official capacities, <br> and STARKE COUNTY, INDIANA, by and <br> through its Commissioners, DONNIE BINKLEY <br> CHARLES CHESAK and KATHY NOREM, <br>     Defendants. | ) <br> ) <br> )   **Cause No: 3:18-cv-399** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Tammy D. Grandstaff, by counsel, Colby A. Barkes of the law firm BLACHLY, TABOR, BOZIK & HARTMAN LLC, and for Plaintiff's Complaint against Defendants, state to the Court as follows:

### JURISDICTION

1.      Plaintiff, Tammy D. (Huskins) Grandstaff is at times relevant to her Complaint a citizen of Pulaski County, Indiana; domiciled in Winamac, Indiana.

2.      The County of Starke is a governmental entity and political subdivision under Indiana law; it operates the Starke County Sheriff's Department (hereinafter the "Department") and paid the salary of and provided employment benefits to Tammy D. Huskins who is now known as Tammy D. Grandstaff.

3.      Defendant, William A. Dulin, also known as Bill Dulin (hereinafter "Sheriff Dulin"), was at all times relevant hereto (and still is) serving as the Sheriff of Starke County, Indiana, acting under the color of law and having policymaking and decisionmaking authority over Tammy D. Huskins (now known as Grandstaff) and other Department employees.

4.     Defendants, Donnie Binkley, Charles Chesak and Kathy Norem, were at all times relevant to Plaintiff's Complaint (and still are) serving as County Commissioners for Starke County, Indiana.

5.     This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441. The matter at controversy involves a federal question of law, including but not limited to, the Fair Labor Standards Act of 1938, 29 U.S.C. §201 et seq., and 42 U.S.C. § 1983 for violations of Plaintiff's First Amendment rights of free speech.

**FACTUAL BACKGROUND**

6.     Tammy D. Grandstaff ("Plaintiff") was formerly known as Tammy D. Huskins and was employed by Defendants during the period of July 2016 through June 5, 2017, and known to Defendants as Tammy D. Huskins.

7.     During times relevant to Plaintiff's Complaint, Plaintiff was employed at Starke County, Indiana, working as a 9-1-1 dispatcher at the Starke County Sheriff's Department (hereinafter the "Department").

8.     During all relevant times herein, Plaintiff was an employee of Defendants and Defendants were her employer within the meaning of the FLSA.

9.     Jana Manning (hereinafter "Chief Manning") was at all times relevant hereto (and still is) serving as the Chief Dispatcher at the Department, with supervisory authority over Plaintiff and other 9-1-1 dispatchers employed at the Department. Chief Manning was Plaintiff's immediate supervisor at the Department with policymaking and decisionmaking authority over Plaintiff and others employed as a 9-1-1 operator.

2

10.     Chris Suprenant ("Suprenant") was at all times relevant hereto (and still is) serving as the Prison Matron and human resources representative for the Department, with supervisory, policymaking and decisionmaking authority over Plaintiff and others employed at the Department.

11.     During times relevant to Plaintiff's Complaint, Dawn (Sims) Bau, Sandy Binkley, Stacy Burger, Melissa Obourne-Keen, Rhonda Edwards, Kimberly Travis, Katie Garab, Char Emigh, Janet Derflinger, Carrie Ray and Katie Hinshaw performed similar job duties at the Department as the Plaintiff, also under the supervision of Sheriff Dulin, Chief Manning and Suprenant.

12.     Between July 2016 and August 2016, Plaintiff performed unpaid work for Defendants while training at the Department.

13.     Defendants refused to pay Plaintiff for her hours worked until after the Department fingerprinted the Plaintiff, which occurred sometime during August 2016.

14.     Plaintiff was an hourly employee of Defendants, required to clock-in prior to beginning her work shift and required to clock-out at the end of her work shift.

15.     When Plaintiff began working at the Department, Defendants regularly scheduled Plaintiff and other employees to work twelve (12) hour shifts for four (4) days during one workweek and then three (3) days of twelve (12) hour shifts the following workweek; paying Plaintiff and other employees around 84 hours of straight time around every other week. Plaintiff earned but was not compensated for overtime. Plaintiff was not paid for additional time worked that was in excess of her scheduled hours.

16.     Plaintiff verbally complained to a human resources representative, Suprenant, about her unpaid work. Suprenant informed Plaintiff that she would not be paid for more

3

than her scheduled hours, even when Plaintiff worked additional time.

17.     To avoid payment of overtime to Plaintiff and others employees, Defendants, by Suprenant, manipulated time worked by employees at the Department by reducing/setting-back time and/or failing to pay for time worked over an employee's scheduled hours. After installation of computer software (commonly called Time Clock Wizard) at the Department, Suprenant made manual adjustments to employees' hours to decrease record of hours worked and/or avoid payment of overtime.

18.     Plaintiff worked loyally and competently for Defendants, and received a positive job performance evaluation from Chief Manning.

19.     During Plaintiff's employment at Defendants, Plaintiff told Sheriff Dulin that the Department's recent loss of deputies were due to an uncompetitive pay rate for comparable work in other counties.

20.     During Plaintiff's employment at Defendants, Plaintiff complained to Sheriff Dulin there were times only a single deputy was on duty to protect the entirety of Starke County because the Department lacked sheriff's deputies.

21.     Upon information and belief, around November 2016 Defendants changed the Department's scheduling practices by implementing a 40 hour workweek.  Thereafter, Defendants continued to avoid payment of overtime to Plaintiff and other employees at the Department. Defendants failed to pay Plaintiff for all hours she worked, by not paying Plaintiff for more than her scheduled hours even when Plaintiff worked additional time. Defendants, by Suprenant, continued to manipulate time and/or make manual adjustments to time records to decrease the amount of time worked and/or avoid payment of overtime to Plaintiff and other employees at the Department.

4

22.     Around May 30, 2017, Plaintiff and Stacy Burger were required by Defendants to attend a training seminar, for which they each provided Defendants with around 11.25 hours of work. Around May 30, 2017, Plaintiff made verbal demand from Defendants, by human resources representative, Suprenant, for payment of all hours that Plaintiff worked.

23.     Around May 31, 2017, Plaintiff reduced her complaint for alleged violation of the FLSA to writing.[1] [Ex.A] Plaintiff threatened legal action against Defendants if she was not paid for all hours she worked on May 30, 2017. [Ex.A]

24.     Upon information and belief, after being informed of Plaintiff's complaint of alleged violation of the FLSA and demand to be paid for all hours Plaintiff had worked, and given Plaintiff had previously expressed matters of public concern to Sheriff Dulin, Sheriff Dulin launched investigation into the job performance of the Plaintiff.

25.     After complaining of alleged violation of the FLSA to Defendants and expressing to Sheriff Dulin matters of public concern, Defendants terminated the Plaintiff.

26.     Around Friday, June 2, 2017, Chief Manning asked Plaintiff for a meeting on her regular day off work, for which Plaintiff was unavailable. Plaintiff appeared for work on Monday, June 5, 2017, and Defendants involuntarily terminated Plaintiff's employment. Defendants failed to pay Plaintiff any wages for her last day of work on June 5, 2017.  Chief Detective Olejniczak informed Plaintiff of the termination decision, and told the Plaintiff that Sheriff Dulin created and maintained her termination letter. Plaintiff was refused copy of her letter of termination.

---

[1] A copy of Tammy Huskins'(now known as Tammy Grandstaff) written complaint to Defendants is attached hereto marked as Exhibit A, and incorporated herein by reference.

27.     On June 5, 2017, Defendants terminated Plaintiff's employment based upon alleged performance issues that occurred prior to her FLSA-complaint on May 30, 2017, which were not just cause for Plaintiff's termination prior to her complaints of violation of the FLSA and/or matters of public concern.

28.     During times relevant herein, Plaintiff complained to Defendants of unfair labor practices occurring at the Department and informed Defendants of matters of public concern.

29.     After involuntary termination of her employment by Defendants, Defendants rounded down Plaintiff's 11.25 hours of work on May 30, 2017, to only 11 hours and then paid Plaintiff for 7 hours of work calculated at time and one-half Plaintiff's regular rate[2] [Ex.B] and thus, 0.75 hours of earned and uncompensated pay remain due and owing to Plaintiff. Upon information and belief Plaintiff's coworker, Stacy Burger received only five (5) hours of pay for attending the same mandatory training.

30.     Earned wages for straight-time and overtime hours during the tenure of her employment remains due and owing to the Plaintiff.

31.     Starke County paid Plaintiff every other week, but failed to pay the Plaintiff for overtime work at the rate of one and one-half times Plaintiff's regular hourly wages.

### Verification

I hereby swear or affirm, under the penalty and pains of perjury, that the above fact representations of in paragraphs 6 through 31 are true and accurate.

TAMMY D. GRANDSTAFF

---

[2] A copy of Tammy D. Huskins' (now known as Tammy D. Grandstaff) final paystub and explanation of pay received is attached hereto as Exhibit B, and incorporated herein by reference.

6

32.     Upon information and belief, after Defendants terminated Plaintiff's employment, and after the Department lost four deputies in around three months, Sheriff Dulin requested a budget increase from the Starke County Commissioners.

33.     Plaintiff filed a notice of tort claim around August 16, 2017.[3] [Ex.C]

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**AND RETALIATION**

Comes now the Plaintiff, by counsel, BLACHLY TABOR BOZIK & HARTMAN, LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

34.     Plaintiff incorporates by reference all paragraphs of the Factual Background section as though fully set forth herein.

35.     During all relevant times herein, Plaintiff was an employee of Starke County, Indiana and said was her employer within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. §201 et seq. ("FLSA").

36.     Plaintiff was a non-exempt employee of the Department who earned, but did not receive, compensation for time worked, together with time and one-half pay for time spent over 40 hours per workweek from Defendants during her employment at the Department (from around July 2016 through June 5, 2017).

37.     When Plaintiff began working at the Department, Defendants regularly scheduled Plaintiff and other 9-1-1 dispatchers to work twelve (12) hour shifts for four (4) days during one workweek and then three (3) days of twelve (12) hour shifts the following workweek; paying Plaintiff and other 9-1-1 dispatchers around 84 hours of

---

[3] A copy of Tammy D. Huskins' (now known as Tammy D. Grandstaff) Notice of Tort Claim is attached hereto as Exhibit C, and incorporated herein by reference.

straight time every other week.

38.    Plaintiff earned but was not compensated for overtime by Defendants during her employment at the Department. Starke County paid Plaintiff an hourly wage, but failed to pay for all overtime she worked at the rate of one and one-half times Plaintiff's regular hourly wages.

39.    Plaintiff earned but was not paid by Defendants for time she worked in excess of her scheduled hours at the Department. Starke County paid Plaintiff an hourly wage, but failed to pay for all hours she worked.

40.    Starke County improperly failed to compensate Plaintiff for all time she was discharging her work-related duties for the Department.

41.    Starke County has not claimed that the FLSA laws do not apply to Plaintiff or that Plaintiff is exempt from the requirements.

42.    Around November 2016, Defendants changed the Department's scheduling practices by implementing a 40 hour workweek. Thereafter, Defendants continued to avoid payment of overtime to Plaintiff and other employees at the Department. Defendants failed to pay Plaintiff for all hours she worked, by not paying Plaintiff for more than her scheduled hours even when Plaintiff worked additional time. Defendants continued to manipulate time and/or make manual adjustments to time records to decrease the amount of time worked and/or avoid payment of overtime to Plaintiff and other employees at the Department.

43.    The FLSA requires an employer to pay its employees at a rate at least one and one-half their regular rate for time worked in one workweek over forty (40) hours. This is commonly known as the time-and-a-half pay for overtime work.

44. Despite working overtime Plaintiff was not paid time and one-half pay from Starke County for all overtime she worked because of Starke County's unfair labor practices.

45. Defendants failed to make a good faith effort to investigate the application of the Fair Labor Standards Act to the Department's employees, including without limitation Plaintiff and other 9-1-1 dispatchers and other civil employees.

46. Around May 30, 2017, Plaintiff informed Suprenant that she was planning to seek legal counsel to pursue legal action based on Starke County's refusal to pay Plaintiff and her coworkers at the Department for all hours worked; this includes earned and uncompensated overtime, time lost by Suprenant's manipulation of the time-clock and computer software commonly referred to as Time Clock Wizard, time lost by Suprenant's rounding down of minutes to the nearest hour, and/or Defendants' refusal to pay for all hours worked beyond an employee's scheduled hours.

47. In Plaintiff's meeting with Suprenant, she informed Suprenant (as Prison Matron and Human Resources Director for the Department) that Plaintiff believed it was illegal for Defendants to deny earned wages to employees.

48. Defendants adopted an illegal policy of manipulation of time to avoid overtime pay in accordance with the FLSA, refusal to pay the Department's employees for all hours worked and/or retribution against those employees who spoke out in reporting unfair labor practices and/or violation of the FLSA.

49. After Plaintiff's meeting with Suprenant and her complaint about violations of the FLSA, Defendants launched investigation into the Plaintiff's past job performance.

50. On June 5, 2017, Defendants terminated Plaintiff's employment based upon

alleged performance issues that occurred prior to her FLSA-complaint on May 30, 2017, which alleged issues were not just cause for Plaintiff's termination prior to her complaint.

51.     Upon information and belief, Sheriff Dulin created and maintained the Plaintiff's termination letter. Plaintiff was refused a copy of her letter of termination.

52.     Defendants terminated Plaintiff's employment because she complained about unfair labor practices and indicated her intent to pursue legal action on the basis of Defendants' alleged violations of the FLSA.

53.     After involuntary termination of her employment by Defendants, Defendants rounded down Plaintiff's 11.25 hours of work on May 30, 2017, to only  eleven (11) hours but then paid Plaintiff for seven (7) hours of work calculated at time and one-half Plaintiff's regular rate[4] [Ex.B] and thus, 0.75 hours of earned and uncompensated pay remain due and owing to Plaintiff. Upon information and belief Plaintiff's coworker, Stacy Burger received only five (5) hours of pay for attending the same mandatory training.

54.     Earned wages for straight-time and overtime hours during the tenure of her employment remains due and owing to the Plaintiff

55.     Plaintiff suffered damages as a result of Defendants' violations of the FLSA and retaliation.

56.     Defendants engaged in the conduct knowingly, intentionally, willfully, and in reckless disregard of Plaintiff's federally protected civil rights under the FLSA.

57.     Count I is being brought against Sheriff Dulin in his individual capacity because he caused and/or participated in Plaintiff's constitutional deprivation.

_____

[4] A copy of Tammy D. Huskins' (now known as Tammy D. Grandstaff) final paystub and explanation of pay received is attached hereto as Exhibit B, and incorporated herein by reference.

58.   Sheriff Dulin acted intentionally with willful indifference to and reckless disregard of Plaintiff's federally protected civil rights under the FLSA.

59.   The FLSA makes any employer who violates section 215(a)(3) liable for such legal and equitable relief as is appropriate to effectuate the purposes of that section, including without limitation, employment, reinstatement, promotion, the payment of lost wages as well as an additional equal amount as liquidated damages, costs, and attorneys' fees.

WHEREFORE, Plaintiff, by counsel, request relief of the Court against Defendants, Starke County, Indiana, and Sheriff Dulin in his official capacity (hereinafter collectively the "Starke County Defendants"), consisting of all damages afforded by law including, but not limited to, the following:

a.   Judgment against the Starke County Defendants for an amount equal to Plaintiff's back pay and front pay in lieu of reinstatement,
b.   Judgment against the Starke County Defendants for damages of lost employment benefits,
c.   Judgment against the Starke County Defendants for compensatory damages;
d.   Judgment against Defendant Sheriff Dulin in his individual capacity for compensatory and liquidated damages;
e.   Costs, attorney's fees, expert witness fees,
f.   Pre- and post-judgment interest, and
g.   All other just and proper relief in the premises against Defendants, jointly and severally.

## COUNT II
## VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH
## AND RETALIATION PURSUANT TO 42 U.S.C. § 1983

Comes now the Plaintiff, by counsel, BLACHLY TABOR BOZIK & HARTMAN, LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

60.     Plaintiff incorporates by reference Paragraphs 6 through 56 of Plaintiff's Complaint as though fully set forth herein.

61.     During times relevant to Plaintiff's Complaint, Plaintiff engaged in protected activity, namely informing Defendants of unfair labor practices stemming from failure to pay their employees, including 9-1-1 dispatchers and other civilian employees, an overtime rate for all hours worked in excess of 40 hours per week which was occurring at the Department.

62.     Plaintiff further engaged in protected activity, namely informing Defendants of unfair labor practices stemming from failure to pay their employees, including 9-1-1 dispatchers and other civilian employees, for all hours worked in excess of scheduled hours which was occurring at the Department.

63.     Plaintiff also engaged in protected activity by telling Sheriff Dulin that the Department's recent loss of deputies was due to Defendants' unfair labor practices and an uncompetitive pay rate for comparable work in other counties.

64.     Plaintiff further engaged in protected activity by complaining to Sheriff Dulin that often times there was a single deputy working the entirety of Starke County because of a lack of sheriff's deputies.

65.     Further, Plaintiff suggested Sheriff Dulin request a budget increase for the Department from the Starke County Commissioners so they may pay all employees in accordance with the FLSA, and increase the rate of pay of deputy sheriffs to avoid further loss of the Department's deputies to other counties.

66.     Plaintiff, a public employee, spoke as a citizen upon these matters of public concern. Plaintiff comments went beyond those made pursuant to her regular job

responsibilities as a 9-1-1 dispatcher.

67.    Defendants knew Plaintiff was engaged in protected activity because she complained to Suprenant, Chief Manning and Sheriff Dulin of Defendants' violation of the FLSA, who are above her within Starke County government of these activities.

68.    Defendants knew Plaintiff was engaged in protected activity because she reported to Defendants, by and through Sheriff Dulin, concerns which are vital to the public's interest and are matters of public concern.

69.    Plaintiff engaged in First Amendment protected free speech when she made complaints to Defendants, by and through Sheriff Dulin, Chief Manning and/or Suprenant.

70.    Plaintiff was terminated as a result of said whistleblowing.

71.    Since making her complaints, Plaintiff has been subjected to retaliation by Defendants, including, but not limited to, Sheriff Dulin launching investigation into the Plaintiff's job performance and Defendants' termination of Plaintiff's employment for alleged performance issues that were not just cause for termination prior to her FLSA complaints and speech about matters of public concern.

72.    Plaintiff's protected speech was a substantial and/or motivating factor in the decisions to involuntarily terminate her employment.

73.    The retaliatory acts taken against the Plaintiff by Defendants were intentional and taken under the color of state law.

74.    Defendants either expressly or by acquiescence, adopted a custom or practice of allowing its employees to make management decisions based upon an employee's exercise of free speech.

75.    Plaintiff suffered adverse employment action because she was engaged in the protected activity described above.

76.    Defendants violated Plaintiff's civil rights under the Constitution of the United States of America and the State of Indiana by intentionally treating her less favorably from others similarly situated to the Plaintiff while having no rational basis for the difference in treatment.

77.    In launching investigation into Plaintiff's job performance and termination of her employment based on Plaintiff's rights of free speech as protected by the First Amendment, Sheriff Dulin, in his individual capacity, acted with malice, improper motives, and/or reckless disregard of Plaintiff's constitutional rights.

78.    Defendants engaged in the conduct knowingly, intentionally, willfully, and in reckless disregard of Plaintiff's constitutional rights.

79.    Defendants actions were intentional, willful and malicious and/or in deliberate indifference for Plaintiff's rights secured by 42 U.S.C. § 1983.

80.    Count II is being brought against Sheriff Dulin in his individual capacity because he caused and/or participated in Plaintiff's constitutional deprivation.

81.    Sheriff Dulin acted with willful indifference to Plaintiff's constitutional rights.

82.    The First Amendment confers upon the Plaintiff the right to be free from retaliation.

83.    The actions of Defendants constitute official actions without proper regard to Plaintiff's constitutional rights under the First Amendment.

84.    Defendants' conduct proximately caused significant harm, damages and lost wages, garden-variety emotional distress, general mental pain and anguish,

14

embarrassment, humiliation and other consequential damages to the Plaintiff.

85.     Punitive damages are required to deter Sheriff Dulin and other individuals who occupy positions of public trust from committing the same or similar violations of the First and Amendment.

**WHEREFORE**, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

a.    Judgment against the Starke County Defendants for an amount equal to Plaintiff's back pay and front pay in lieu of reinstatement,

b.    Judgment against the Starke County Defendants for damages of lost employment benefits,

c.    Judgment against the Starke County Defendants for compensatory damages;

d.    Judgment against Defendant, Sheriff Dulin, in his individual capacity, for compensatory and punitive damages in such an amount as the jury may determine is sufficient to punish Sheriff Dulin (in his individual capacity) for and deter others from committing the constitutional violations alleged in this complaint;

e.    Expenses of litigation and reasonable attorney fees and costs;

f.    Pre- and post-judgment interest at the statutory rate; and

g.    All other just and proper relief in the premises, against Defendants, jointly and severally.

Respectfully submitted,
**Blachly, Tabor, Bozik & Hartman, LLC**


Colby A. Barkes (Atty. #26251-64)
56 Washington St., Suite 401
Valparaiso, Indiana 46383
Ph. (219) 464-1041
Fax (219) 464-0927
cabarkes@btbhlaw.com
Attorney for Plaintiff

## JURY DEMAND

COMES NOW the Plaintiff, Tammy D. (Huskins) Grandstaff, by counsel, Colby A. Barkes of Blachly Tabor Bozik & Hartman LLC, and demands trial by jury.

Respectfully submitted,
**Blachly, Tabor, Bozik & Hartman, LLC**

_____

Colby A. Barkes (Atty. #26251-64)
56 Washington St., Suite 401
Valparaiso, Indiana 46383
Ph. (219) 464-1041
Fax (219) 464-0927
cabarkes@btbhlaw.com
Attorney for Plaintiff

16